506 So.2d 1296 (1987)
TEXAS PIPE AND SUPPLY COMPANY, Plaintiff-Appellee,
v.
COON RIDGE PIPELINE CO., INC., et al., Defendants-Appellants.
No. 18631-CA.
Court of Appeal of Louisiana, Second Circuit.
May 6, 1987.
Sockrider, Bolin and Anglin by James E. Bolin, Shreveport, for plaintiff-appellee.
Schober & Brabham by John L. Schober, Jr., Kim Hanson LaVigne, Shreveport, for defendants-appellants Dilligas, Inc. and Palmer R. Long, Sr.
Before HALL, JASPER E. JONES and LINDSAY, JJ.
LINDSAY, Judge.
Suit was filed on February 15, 1985 by Texas Pipe and Supply Company, Inc. (Texas Pipe) against Coon Ridge Pipeline Company, Inc. and others for recognition of a lien under LSA-R.S. 9:4861 et seq. and to collect money due on an open account for materials furnished in the building of a pipeline. The trial court rendered judgment in favor of the plaintiff, Texas Pipe, and against defendants, Dilligas, Inc. and Palmer R. Long, Sr., in solido, in the sum of $101,947.30, plus interest, attorney fees and costs, subject to a set off for any amounts recovered by plaintiff from the pending bankruptcy of Bell Supply Company (Bell Supply). In addition, the lien and privilege of Texas Pipe provided by the Oil Well Lien Act, LSA-R.S. 9:4861 et seq., was recognized. Dilligas, Inc. and Palmer R. Long, Sr. appealed, contending that LSA-R.S. 9:4861 et seq. does not provide a lien and privilege to one who has furnished supplies to a person other than the builder *1297 and/or owner of the pipeline. For the following reasons, we affirm the trial court judgment.

FACTS
Wicker Oil, Inc. is the operator of several gas wells located in Sabine Parish, Louisiana. In order to market this gas, the owners of the wells asked Mr. Wicker, the principal stockholder of Wicker Oil, Inc., to build a pipeline. In order to build the pipeline, Mr. Wicker created a corporation known as Coon Ridge Pipeline Company, Inc. However, Mr. Wicker eventually decided not to use Coon Ridge but instead caused Wicker Oil Company, Inc. to supervise the construction of the pipeline. Upon completion of the pipeline, ownership was transferred to Dilligas, Inc.
In order to build the pipeline, it was determined that approximately 32,000 feet of four (4) inch pipe would be required. Officials of Wicker Oil Company, Inc. contacted several suppliers of pipe, including Bell Supply, seeking bids for supplying the pipe. Bell Supply submitted the low bid of $111,406.98 and it was awarded the contract.
In order to fulfill its contract with Wicker Oil Co., Inc., Bell Supply entered into a purchase contract for the pipe with Texas Pipe. Bell Supply agreed to purchase the pipe from Texas Pipe for $101,947.30. The pipe was to be delivered F.O.B. the job site in Sabine Parish. Pursuant to its contract with Bell Supply, Texas Pipe delivered approximately 32,000 feet of four inch pipe to work sites in Sabine Parish, Louisiana between October 10 and October 16, 1984. The pipe was delivered directly to the various sites where the pipe was to be laid in the construction of the pipeline.
On October 31, 1984, Wicker Oil, Inc. paid Bell Supply the contract price for the pipe which it had ordered. However, shortly thereafter, and without paying Texas Pipe for the pipe which had been delivered to the job sites in Sabine Parish, Bell Supply filed for protection under Chapter 11 of the Bankruptcy Code. Not having been paid, Texas Pipe filed a lien in the mortgage records of Sabine Parish pursuant to LSA-R.S. 9:4861 et seq.
When the lien was filed, Dilligas, Inc. was the owner of the pipeline. Mr. Palmer R. Long, Sr. is the owner of an undivided interest in the gas pipeline and a shareholder in Dilligas, Inc. In order to have the lien removed from the mortgage records, Dilligas, Inc. and Mr. Long signed personal guarantees for the sum of $101,947.30.
Suit was filed on February 15, 1985 against Coon Ridge Pipeline Company, Inc. The suit was later amended to join Dilligas, Inc. and Palmer R. Long, Sr. as defendants. Dilligas and Palmer Long, Sr. then resisted payment, contending that Bell Supply, the furnisher of the pipe, had already been paid and that Texas Pipe was not entitled to any lien rights under LSA-R.S. 9:4861.
Following a trial on the merits, a judgment was rendered by the trial court in favor of Texas Pipe and against Dilligas, Inc. and Palmer R. Long, Sr., in solido, in the amount of $101,947.30 with interest and attorney's fees, plus all costs of the proceedings, subject to a set off for any amounts recovered by Texas Pipe from the bankruptcy proceedings initiated by Bell Supply. The trial court also recognized plaintiff's lien against the pipeline under the provisions of LSA-R.S. 9:4861.

THE APPLICATION OF LSA-R.S. 9:4861
The basic issue presented in this case is whether Texas Pipe was a "furnisher" of materials and supplies under the provisions of LSA-R.S. 9:4861. Appellants contend that the transactions involving Texas Pipe and Bell Supply were contracts of sale and resale whereby Texas Pipe sold to Bell Supply and Bell Supply sold to the ultimate end user. Appellants contend that only Bell Supply was a "furnisher." Appellants contend that LSA-R.S. 9:4861 must be strictly construed and the statute does not extend to or provide a lien in favor of Texas Pipe because Texas Pipe was a "furnisher of a furnisher" of material and supplies. Hence, according to appellants, if Bell Supply had not been paid, Bell Supply *1298 would have been entitled to a lien and privilege, but not Texas Pipe.
Part 2 of the Private Works Act relates specifically to oil, gas, and water wells. LSA-R.S. 9:4861(B) provides, in part:
Any person who ... furnishes any ... equipment, material or supplies ... for or in connection with the construction, operation or repair of any flow lines or gathering lines, regardless of their length, and any other pipeline owned by the producer, operator or contract operator of the well or wells ... has a privilege on all oil or gas produced from the well or wells and the proceeds thereof and earnings inuring to the working interest therein and on the oil, gas or water well or wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks, pipelines, flow lines, gathering lines and other related equipment ... for the amount due for such ... material, or supplies, in principle and interest, and for the cost of preparing and recording the privilege as well as 10% attorney's fees in the event it becomes necessary to employ an attorney to enforce collection thereof....
Since the privilege is in favor of "any person who furnishes," this court must determine whether Texas Pipe is a furnisher of pipe in this case. It is not disputed that Bell Supply is a furnisher, and would be entitled to the privilege established by LSA-R.S. 9:4861(B).
The dispute lies in the right of Texas Pipe to claim the privilege. In interpreting the statute creating this privilege, we note that liens and privileges are stricti juris. "They are in derogation of common rights and may not be extended by way of construction to cover situations not clearly intended to be comprehended by them." Willis v. Mills Tooke Properties, Inc., 42 So.2d 548 (La.App. 2d Cir.1949). We are also guided by LSA-C.C. Art. 14 which provides that "the words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words."
In Oil Well Supply Company v. Independent Oil Company, 219 La. 936, 54 So.2d 330 (1951), material and supplies were sold by the plaintiff, Oil Well Supply Company, to Independent Oil Company. Oil Well Supply Company then delivered the material and supplies from its warehouse direct to an oil and gas lease and those items were used in either drilling, completing or operating the oil wells. When Oil Well Supply Company was not paid, it filed a lien against the oil well and the lease to which it had delivered the material and supplies. The trial court upheld the plaintiff's right to the lien. The owners of the lease upon which the wells were drilled and for which Oil Well Supply Company furnished the supplies appealed. The appellants contended that for plaintiff to be entitled to a lien and privilege there must be some contractual relationship between the one claiming the privilege and the owner, operator, producer, or driller of the wells, and that no such contractual relationship had been proved or established. Furthermore, they contended that if a lien and privilege was granted to plaintiff, Oil Well Supply Company, this would result in the granting of a privilege to a "furnisher of a furnisher" of material and supplies.
The Supreme Court held that there was no requirement that a contract or any contractual relationship exist between the furnisher of the material and supplies and the owner, operator, producer or driller of the oil well in order for the lien and privilege of LSA-R.S. 9:4861 to be effective. The court held that under LSA-R.S. 9:4861, all that is necessary for the lien and privilege to attach is for one to furnish the material and supplies which are used in the drilling of an oil well or in connection therewith.
In Oil Well Supply Co., supra, the Supreme Court found that the sale of the materials had been made by Oil Well Supply Company to Independent Oil Company. The court then held that Oil Well Supply Company's lien was valid even though there was no contract between the supplier *1299 and the owner, operator, producer or driller of the well. It can therefore be assumed that Independent Oil Company, which contracted for the delivery of the material and supplies, was not the owner or driller of the wells.
Although the Supreme Court stated that the record did not specifically show that Oil Well Supply Company was the "furnisher of a furnisher," it found that the privilege was valid because Oil Well Supply Company "furnished the materials and supplies by delivering them direct to the leased premises on which the well was drilled, and these materials and supplies were actually used in the drilling of the oil well or in connection therewith." Oil Well Supply Company, supra at pp. 332-333. Thus, the Supreme Court determined that one who delivered material and supplies to the well site, which were actually used in the drilling or some other associated activity of the oil well was a "furnisher" under LSA-R.S. 9:4861.
In the instant case, we are presented with a similar situation. Although there was no contract between Texas Pipe and the owner, operator or builder of this pipeline, Texas Pipe delivered the pipe directly to the job site and thereby "furnished" the identifiable pipe used in the construction of the pipeline.
We are mindful of plaintiff's contention and argument that the privilege established by LSA-R.S. 9:4861 is available only to the immediate furnisher of material and supplies and that Texas Pipe sold the pipe to Bell Supply and did not furnish the pipe to the owners of the pipeline and wells serviced thereby. Appellants argue that to uphold the privilege in this case would result in an endless stream of "furnishers" and would allow lien rights for parties who are far removed from the actual supplying of materials to an oil well or pipeline. We disagree.
The statute in question, LSA-R.S. 9:4861, does not restrict its operation to "retailers" or "immediate furnishers" but, on the contrary, applies to those who furnish. The term "furnishes" is not defined in the statute. However, the term is sufficiently broad to encompass the plaintiff under the specific facts of this case, who caused to be delivered directly to the job site 32,000 feet of identifiable pipe which was actually used in the construction of the specific pipeline in question.
We therefore hold that the privilege established by LSA-R.S. 9:4861 is available to Texas Pipe. The statute requires only that one "furnish" materials. Texas Pipe delivered the materials to the pipeline work sites. The pipe which was delivered was used in the building of the pipeline. There is no contention that the materials supplied were used in any other fashion. Although there was no contract between Texas Pipe and the appellants, the Supreme Court held that none is required. Oil Well Supply Co., supra. Similarly, even though the materials were sold by Texas Pipe to Bell Supply, the sale was of readily identifiable material which was to be used for a specific purpose on a particular pipeline. Furthermore, the supplies were delivered to a specific job site by Texas Pipe. Under these facts, the trial court was correct in recognizing plaintiff's lien and privilege.
Appellants also contend that the lien affidavit filed by plaintiff in the mortgage records of Sabine Parish was inadequate to perfect the lien. However, we have reviewed the language employed in the affidavit, which basically sets forth the facts as recited herein, and find that the lien affidavit was sufficient to perfect plaintiff's lien.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellants, Dilligas, Inc. and Palmer R. Long, Sr.
AFFIRMED.