545 So.2d 709 (1989)
BAKER CHEMICALS, INC., Plaintiff/Appellant,
v.
ARKLA EXPLORATION COMPANY, Defendant/Appellee.
No. 20572-CA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*710 Cook & Oliver by Mark B. Oliver, Lafayette, for plaintiff/appellant.
Blanchard, Walker, O'Quin & Roberts by Reginald E. Cassibry, Shreveport, for defendant/ appellee.
Before NORRIS and HIGHTOWER, JJ., and JASPER E. JONES, J. Pro Tem.
NORRIS, Judge.
The plaintiff, Baker Chemicals Inc., sued the defendant, Arkla Exploration Co., for recognition of a lien and privilege on an oil and gas well and appurtenant structures in Red River Parish, under LSA-R.S. 9:4861. Arkla answered with general denials. The case was submitted on stipulated facts. The district court denied Baker's claims and Baker now appeals. For the reasons expressed, we affirm.

Facts
In February 1986 Baker entered a warehouse agreement with Drilling Chemicals Inc. ("DCI"), which owned a warehouse in Minden. Under the agreement, Baker established an inventory of its mud drilling equipment at DCI's warehouse. DCI in turn had a contract with a Mr. Willis, doing business as Arkla Mud Co., which is not related to the defendant Arkla Exploration Co. Willis operated the warehouse and DCI paid him to deliver materials from the warehouse to the well locations. Baker also contracted with Willis to maintain its inventory at the warehouse and to act as its agent in sales to DCI.[*] Whenever Arkla Exploration needed equipment at its well site, it would contact DCI, which in turn would contact Willis. On receipt of the order, Willis would make out a sales delivery record showing a sale from Baker to DCI; he would then segregate the requested materials and make out a second invoice or delivery ticket from DCI to Arkla Exploration. At DCI's direction, Willis would then deliver the materials to Arkla's well. Willis was paid by DCI. DCI sent bills to Arkla; these were paid in full. DCI, however, did not pay Baker $6,578.73. This prompted Baker's action against Arkla.
Baker asserted a lien based on the Louisiana Oil, Gas and Water Well Lien Statute (R.S. 9:4861 et seq.), which provides in part:
§ 4861. Privilege for labor, services or supplies

* * * * * *
B. Any person who * * * furnishes any * * * drilling rigs, standard rigs, machinery, equipment, materials or supplies for or in connection with the drilling of any well or wells in search for oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells, * * * has a privilege on * * * all drilling rigs * * * and other structures thereto attached * * *. (emphasis added)
The district court found that before each sale was transacted, the equipment was part of Baker's inventory and Arkla made a request to DCI. However, there was a completed sale from Baker to DCI before DCI ever sold it to Arkla and delivered it to Arkla's site. The district court concluded this broke the link between Baker and Arkla. In effect, Baker furnished materials to DCI and DCI furnished them to Arkla, but Baker did not furnish them to Arkla as required by the statute. The court therefore rejected Baker's demands.

*711 Discussion

The issue for review is narrow: whether the supplier, who did not actually deliver materials to the wellsite, can claim the statutory lien and privilege. The statute does not define "furnish," either to include or exclude Baker's claim.
Baker concedes that there was no direct chain of furnishing between itself and the owner/operator of the well. Baker contends, however, that the jurisprudence considers a "furnisher" to be not only a supplier who delivers to the wellsite identifiable materials used in drilling or operation, but also one who causes them to be delivered. In support it cites Oil Well Supply Co. v. Independent Oil Co., 219 La. 936, 54 So.2d 330 (1951) and Texas Pipe & Supply Co. v. Coon Ridge Pipeline Co., 506 So.2d 1296 (La.App. 2d Cir.1987). According to Baker, these cases reject the notion that there must be a direct, contractual connection between the supplier and the owner of the well in order for the supplier to claim the lien. We agree that the presence of an intermediary sale or lease of material or equipment does not automatically destroy the supplier's right to assert the lien.
A closer review of the cases, however, convinces us that working through a middleman is not the determinative fact. Rather, the cases reiterate the general law of mechanics' liens, which states that lien statutes must be narrowly construed. Blasingame v. Anderson, 236 La. 505, 108 So.2d 105 (1959); Willis v. Mills Tooke Properties, 42 So.2d 548 (La.App. 2d Cir. 1949). The statute does not plainly extend or refuse lien rights to furnishers of furnishers. The courts have asked who delivered the materials to the wellsite and have questioned the supplier's expectations of security, as evidenced by its contract.
Baker correctly asserts that the opinion in Oil Well Supply, supra, does not exclude a furnisher of a furnisher from lien protection. However, the facts in Oil Well Supply distinguish it from the instant case. The supreme court stated that the supplier "furnished" the materials "by delivering them directly to the leased premises." 54 So.2d at 333. The supreme court thus equated "furnishing" with "directly delivering."
Likewise, in Coon Ridge Pipeline this court noted that the supplier "delivered the pipe directly to the job site and thereby `furnished' the identifiable pipe[.]" 506 So.2d at 1299. This is despite dictum which might suggest that "causing to be delivered directly" is sufficient. The requirement of actual delivery in order to activate lien rights is also consistent with earlier jurisprudence. See Sutton-Zoile Oil Co. v. Barr Petr. Corp., 197 So. 432 (La.App. 2d Cir.1940).
Furthermore, the third circuit has recently examined the issue of delivery in terms of the supplier's expectation of security. In P & A Well Serv. v. Blackie's Power Swivels Inc., 507 So.2d 280 (La.App. 3d Cir.1987), writ denied 513 So.2d 288 (La. 1987), the court explained that oilfield suppliers know the purpose of the law is to protect the furnisher of materials who supplies the materials directly to the construction site. Such a furnisher knows that if the party he contracted with does not pay him, he is entitled to a lien against a site. A furnisher of materials can therefore rely on the statute and take more of a risk in supplying than he ordinarily would, since he has another way to collect. The situation is different, however, when the supplier's involvement stops with a middleman. Quoting the district court, the court of appeal stated:
[W]hen we have a situation where the furnisher does not even know that his equipment is going to eventually end up on certain property and [be] used for a certain purpose by a certain person, then how can it be said that [the furnisher] relied at all on theand took comfort from the liens statute? [His] motive in furnishing the equipment was not to supply the site with anything. It was rather to collect rent from someone[.] * * * [T]he only reliance [he] had of getting paid was the [lessee's] credit standing[.] 507 So.2d at 283.
*712 This reasoning is applicable to the instant case. Baker's only obligation was to maintain an inventory with DCI, and it undertook this obligation looking only to DCI as obligor. While Baker certainly anticipated that DCI or Willis would sell the materials to ultimate users, it never dealt with them or relied on their credit. In effect, Baker was insulated contractually and physically from the owners and operators who used the materials at the wellsites.
The facts of this case show that Baker did not actually deliver the materials to Arkla's wellsite and did not look directly to Arkla for payment. Under the jurisprudence construing the statute, Baker's acts are not sufficient to give it lien rights. The district court's judgment was correct.
We stress that a "furnisher of a furnisher" is not automatically excluded from the protection of R.S. 9:4861 just because he used a middleman or a lessee. Oil Well Supply and Coon Ridge Pipeline, supra. However, a "furnisher of a furnisher" who does not actually deliver the materials to the site and does not look to the well for security has not established his right to assert the lien.
The judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[*] This agreement was not reduced to writing until May 1986 but it was made retroactive to the sales that led to this litigation.