556 So.2d 226 (1990)
BAKER CHEMICALS, INC., Appellant,
v.
TXO PRODUCTION COMPANY and Apcot-Finandel Joint Venture, Appellees.
No. 21125-CA.
Court of Appeal of Louisiana, Second Circuit.
January 24, 1990.
Mangham, Hardy, Rolfs and Abadie by Mark B. Oliver, Lafayette, for appellant.
Shotwell, Brown & Sperry by Marshall T. Napper, Monroe, for appellees.
*227 Before SEXTON, NORRIS and LINDSAY, JJ.
SEXTON, Judge.
In this case, plaintiff-appellant, Baker Chemicals, Inc. (Baker), appeals the trial court's denial of its claim for recognition of a lien and privilege on an oil and gas well, the lease or leases on which the well is situated, and appurtenant structures, under LSA-R.S. 9:4861 B. For reasons hereinafter stated, we affirm.
The facts of the case are undisputed, as the case was submitted to the trial court on stipulations (and attachments thereto) between Baker and defendants-appellees, TXO Production Corp. and Apcot-Finandel Joint Venture (TXO). The stipulations reflect that in February 1986, Baker entered into a warehouse agreement with Drilling Chemicals, Inc. (DCI) under which Baker kept an inventory of drilling mud and materials at a warehouse in Minden owned by DCI. Upon receipt by a DCI representative of an order from an individual consumer such as TXO for materials at a particular site, DCI would purchase the materials or supplies necessary to fill the order from Baker. These materials would then be removed from the Baker-owned inventory and segregated, completing the sale.
The supplies in this case were delivered to the premises of TXO's well site by a Mr. M.M. Willis, d/b/a Arkla Mud Company, pursuant to a contract between Mr. Willis and DCI to operate the warehouse and deliver materials from the warehouse to well locations. Mr. Willis also had a contract with Baker to maintain its inventory at the warehouse and to act as its agent in handling Baker's supplies in the warehouse. However, it is clear that the materials at issue were segregated from Baker inventory at the DCI warehouse in Minden and delivered by Mr. Willis directly to the TXO well site at the expense of DCI.
TXO paid DCI in full $7,016.65 for the instant materials. DCI, however, did not pay Baker. This default prompted Baker to record the above described lien under the Louisiana Oil, Gas and Water Well Lien Statute (LSA-R.S. 9:4861 et seq.) against TXO. Pertinent provisions of that statute read as follows:
B. Any person who ... furnishes any... drilling rigs, standard rigs, machinery, equipment, material or supplies for or in connection with the drilling of any well or wells in search for oil, gas or water, or for or in connection with the operation of any oil, gas or water well or wells ... has a privilege on ... all drilling rigs ... and other structures thereto attached ... (emphasis added)
Baker claims it is entitled to a lien and privilege against TXO for the drilling mud and materials which TXO purchased from DCI and which were delivered to the well by Mr. Willis. Baker claims that it is a "furnisher" of supplies under LSA-R.S. 9:4861 B because the mud and supplies delivered by Mr. Willis and sold by DCI to TXO originally belonged to Baker, being segregated from Baker-owned inventory only immediately before it was to be delivered to the TXO well site. Baker therefore contends that it can be considered a "furnisher" of materials even though it did not physically deliver the materials to the well site. It cites Oil Well Supply Co. v. Independent Oil Co., 219 La. 936, 54 So.2d 330 (La.1951), and Texas Pipe and Supply v. Coon Ridge Pipeline Co., 506 So.2d 1296 (La.App. 2d Cir.1987), for the proposition that LSA-R.S. 9:4861 B affords furnisher status not only to a material man who delivers to the well site but also to one who causes identifiable material which is used in connection with the drilling or operation of the well to be delivered to the job site. It claims that the circumstance of the instant case in which the materials sold were delivered directly from the Baker stock to the DCI stock and immediately to TXO maintains this separateness of identity. It contends that even though it did not physically transport the material with its own trucks, the jurisprudence suggests that the critical element in determining furnisher status under the lien act is whether the furnisher can identify the materials which are delivered and used in the well.
The trial court found that Baker did not "furnish" supplies to TXO under the lien *228 act. The trial court determined that contrary to the circumstances in the Oil Well Supply Company and the Texas Pipe & Supply Company cases, the instant plaintiff did not actually deliver the supplies to the well site. The court therefore concluded that this plaintiff, Baker "was neither the seller nor the deliverer". We agree.
The instant case is virtually identical to Baker Chemicals Inc. v. Arkla Exploration, 545 So.2d 709 (La.App. 2d Cir. 1989), writ denied, 550 So.2d 632 (La.1989), which distinguished the jurisprudence relied on by appellants. As that court pointed out, the Oil Well Supply Company and Texas Pipe & Supply Company cases stand for the proposition that "the presence of an intermediary sale or lease of material or equipment does not automatically destroy the supplier's right to assert the lien." Baker Chemicals Inc. v. Arkla Exploration, supra at, 711. However, in both the Oil Well Supply Company and Texas Pipe & Supply Company cases, the plaintiffs "furnished" the materials at issue by delivering them directly to the well site. In the instant case, delivery was to a middle man at his location, and at that point of delivery the plaintiffs had no idea where the materials were to be used. They were sold and "furnished" by another entity, DCI.
Because the instant case is indistinguishable from Baker Chemicals, Inc. v. Arkla Exploration, supra, we find, as we did in that case, that Baker did not "furnish" supplies to TXO under the lien act because Baker did not actually deliver the materials to TXO's well site. The judgment of the district court is affirmed at the cost of appellant.
AFFIRMED.