Katherine BRADACS and Tracie
Goodwin, Plaintiffs,

v.

Nimrata ("Nikki") Randhawa HALEY,
in her official capacity as Governor of
South Carolina; Alan M. Wilson, in
his official Capacity as Attorney Gen-
eral, Defendants.

Civil Action No. 3:13–cv–02351–JMC.

United States District Court,
D. South Carolina,
Columbia Division.

Signed Nov. 10, 2014.

500

Carrie A. Warner, Warner Payne and Black, John Shannon Nichols, Bluestein and Nichols, Columbia, SC, Laura W. Morgan, Family Law Consulting, Charlottesville, VA, for Plaintiffs.

Alan Wilson, Brendan McDonald, Ian Parks Weschler, James Emory Smith, Jr., Robert Dewayne Cook, SC Attorney General's Office, Columbia, SC, for Defendants.

### ORDER AND OPINION

J. MICHELLE CHILDS, District Judge.

Plaintiffs Katherine Bradacs ("Bradacs") and Tracie Goodwin ("Goodwin") (collectively "Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 seeking "to challenge the constitutionality of South Carolina's laws and constitutional provisions that deny legal recognition in South Carolina to the marriages of same-sex couples who are married in one of the many states and numerous foreign countries where same-sex marriages are legal." (ECF No. 41 at 1 ¶ 1 (citing S.C. Const. Art. XVII, § 15; S.C.Code § 20–1–15 (1976)).)

This matter is before the court pursuant to a Motion by Defendants Nimrata Randhawa Haley ("Defendant Haley"), in her official capacity as Governor of South Carolina; and Alan M. Wilson ("Defendant Wilson"), in his official capacity as Attorney General, (collectively "Defendants") for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c). (ECF No. 78.) Plaintiffs oppose Defendants' Motion asserting that they have failed to establish that they are entitled to judgment under Fed.R.Civ.P. 12(c). (ECF No. 82.) For the reasons set forth below, the court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Judgment on the Pleadings.

## I. RELEVANT BACKGROUND TO THE PENDING MOTION

Plaintiffs, who are both female, were married in the District of Columbia on April 6, 2012. (ECF No. 41–1.) Despite that their marriage is legally recognized by the federal government pursuant to the United States Supreme Court's decision in *United States v. Windsor,* — U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013), Plaintiffs' marriage is not recognized in the State of South Carolina. As a result, Plaintiffs filed a Verified Complaint for Declaratory, Injunctive, and Other Relief on August 28, 2013, seeking relief for claims based on 42 U.S.C. § 1983 for violations of due process, claims based on 42 U.S.C. § 1983 for violations of equal protection under the United States Constitution on the basis of sexual orientation and on the basis of sex, and claims based on 42 U.S.C. § 1983 for violations of due process and equal protection by failing to honor the Full Faith and Credit Clause of the United States Constitution, all in violation of the Fourteenth Amendment to the United States Constitution. (ECF No. 1.) Plaintiffs seek a declaratory judgment that the South Carolina statutes and constitutional provisions disallowing the recognition of their same-sex marriage violate their rights to due process and equal protection under the laws, a preliminary and permanent injunction against Defendants and others enforcing the application of these allegedly illegal laws and directing the State of South Carolina to recognize Plaintiffs' marriage and those marriages validly entered into by other same-sex couples outside of the State of South Carolina. (*Id.*)

Defendants filed their Answer on November 14, 2013. (ECF No. 29.) In their Answer, Defendants deny that Plaintiffs'

suit has any legal merit or that Plaintiffs are entitled to any relief or that same-sex marriage is a fundamental right. Defendants further assert that Plaintiffs lack standing to raise any claims on behalf of themselves or as to other same-sex couples, that the State of South Carolina is not required to give recognition of same-sex marriages from other jurisdictions and that such recognition would be contrary to the Tenth Amendment and the sovereign interests of the State, and that Defendants are entitled to Eleventh Amendment Immunity. (*Id.*)

On January 23, 2014, Plaintiffs filed a Motion to Amend the Complaint to add an additional cause of action regarding due process and equal protection under the Constitution of South Carolina. (ECF No. 37.) In their Verified Amended Complaint for Declaratory, Injunctive, and Other Relief, Plaintiffs also requested that the court enjoin Defendants from denying Plaintiffs and all other same-sex couples the right to marry. (ECF No. 37–1.) Defendants consented to the motion. (ECF No. 38.) Thereafter, Plaintiffs filed Verified Amended Complaint for Declaratory, Injunctive, and Other Relief on February 21, 2014. (ECF No. 41.) Defendants filed an Answer to the Amended Complaint on March 14, 2014, asserting essentially the same or similar defenses as stated in the Answer to the original Complaint. (ECF No. 45.)

On April 3, 2014, Defendants filed a Motion to Stay and Hold Cross–Motions Deadline in Abeyance in which they requested that the court stay the proceedings in this case until the United States Court of Appeals for the Fourth Circuit issued its final opinion in the appeal of the same-sex marriage decision of the United States District Court for the Eastern District of Virginia in *Bostic v. Rainey*, 970 F.Supp.2d 456 (E.D.Va.2014). (ECF No.

47.) The court granted Defendants' Motion to Stay on April 22, 2014. (ECF No. 54.) The Fourth Circuit issued its ruling in the *Bostic* case on July 28, 2014. *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir.2014). Thereafter, on October 6, 2014, the United States Supreme Court denied certiorari in the companion matters of *Rainey v. Bostic*, —— U.S. ——, 135 S.Ct. 286, 190 L.Ed.2d 140 (2014), *Schaefer v. Bostic*, —— U.S. ——, 135 S.Ct. 308, 190 L.Ed.2d 140 (2014), and *McQuigg v. Bostic*, —— U.S. ——, 135 S.Ct. 314, 190 L.Ed.2d 140 (2014). By denying certiorari in these cases, the Supreme Court, in effect, did not overturn the ruling of the United States Court of Appeals for the Fourth Circuit in *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir.2014). In *Bostic*, the Fourth Circuit held that marriage laws prohibiting legal recognition of same-sex relationships in Virginia "violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they prevent same-sex couples from marrying and prohibit Virginia from recognizing same-sex couples' lawful out-of-state marriages." *Id.* at 384. On October 7, 2014, the court *sua sponte* lifted the stay in this case and directed the parties to submit a proposed Amended Scheduling Order and/or Briefing Schedule to the court by October 15, 2014. (ECF No. 70.) The parties consented to a Scheduling Order which required that the dispositive motions in this case be filed by October 23, 2014, with responses and replies to follow thereafter in accordance with the scheduling order. (ECF No. 71.).

On October 20, 2014, Plaintiffs filed a Motion for Summary Judgment requesting that the court declare as unconstitutional the South Carolina statutes and constitutional provisions precluding persons from entering same-sex marriages or having their out-of-state valid same-sex marriages recognized in South Carolina and enter

judgment in their favor. (ECF No. 75.) On October 23, 2014, Defendants filed a Motion for Judgment on the Pleadings arguing that this action is barred by federalism and the Eleventh Amendment, and that Plaintiffs lack standing to sue Defendants. (ECF No. 78.) On October 31, 2014, Plaintiffs filed a response in opposition to Defendants' Motion for Judgment on the Pleadings, to which Defendants filed a reply in support of their motion on November 4, 2014. (ECF Nos. 82, 85.)

Although Plaintiffs filed their Motion for Summary Judgment first in this case, the court finds it more prudent to rule first on Defendants' Motion for Judgment on the Pleadings since such a motion is based solely on the pleadings.

## II. LEGAL STANDARD

### A. *Motions for Judgment on the Pleadings*[1]

Fed.R.Civ.P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Id.* "A fairly restrictive standard" is applied in ruling on a Rule 12(c) motion, as "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *Greenwich Ins. Co. v. Garrell,* Civil Action No. 4:11–cv–02743–RBH, 2013 WL 869602, at *4 (D.S.C. Mar. 7, 2013) (quoting 5C Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed.2011)). A motion for judgment on the pleadings is intended to test the legal sufficiency of the complaint and will operate to dispose of claims "where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noted facts." *Cont'l Cleaning Serv. v. UPS,* No. 1:98CV1056, 1999 WL 1939249, at *1 (M.D.N.C. Apr. 13, 1999) (citing *Herbert Abstract v. Touchstone Props., Inc.,* 914 F.2d 74, 76 (5th Cir.1990)). "[A] motion for judgment on the pleadings is decided under the same standard as a motion to dismiss under Rule 12(b)(6)."[2] *Deutsche Bank Nat'l Trust Co. v. IRS,* 361 Fed.

---

1. Notably, Defendants did not discuss the legal standard relevant to the adjudication of the Motion for Judgment on the Pleadings. The proper legal standard informs the scope of the analysis relating to the issue before the court. Thus, the court defines the legal standard for this motion without input from the moving party.

2. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." " *Edwards v. City of Goldsboro,* 178 F.3d 231, 243–44 (4th Cir.1999) (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir.1992)). "The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact."

*Wheeling Hosp., Inc. v. Ohio Valley Health Servs. and Educ. Corp.,* C/A No. 5:10CV67, 2010 WL 4977987, at *4 (N.D.W.Va. Dec. 2, 2010) (citing 5B Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed.1998)). Because such a motion is intended to test the legal adequacy of the complaint, not to address the merits of any affirmative defenses, a defense may generally be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint." *Suarez Corp. Indus. v. McGraw,* 125 F.3d 222, 229 (4th Cir.1997). Otherwise, affirmative defenses are "more properly reserved for consideration on a motion for summary judgment." *Id.* In considering the foregoing, the court only addresses in this order the defenses cited by Defendants in their Answer to the Amended Complaint that are applicable to the court's analysis at this stage of the proceedings.

Appx. 527, 529 (4th Cir.2010) (citing *Independence News, Inc. v. City of Charlotte,* 568 F.3d 148, 154 (4th Cir.2009)); *see also Massey v. Ojaniit,* 759 F.3d 343, 353 (4th Cir.2014) (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999)); *Walker v. Kelly,* 589 F.3d 127, 139 (4th Cir.2009).

The key difference between a Rule 12(b)(6) motion and a Rule 12(c) motion is "that on a 12(c) motion, the court is to consider the answer as well as the complaint." [3] *Fitchett v. Cnty. of Horry, S.C.,* C/A No. 4:10–cv–1648–TLW–TER, 2011 WL 4435756, at *3 (D.S.C. Aug. 10, 2011) (quoting *Cont'l Cleaning Serv.,* 1999 WL 1939249, at *1); *see also A.S. Abell Co. v. Balt. Typographical Union No. 12,* 338 F.2d 190, 193 (4th Cir.1964). "When considering a motion for judgment on the pleadings, the court may consider the pleadings, exhibits attached thereto, documents referred to in the complaint that are central to the plaintiff's claims, and other 'materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.'" *In re MI Windows & Doors, Inc. Prods. Liab. Litig.,* MDL No. 2333, Nos. 2:12–mn–00001, 2:12–cv–02269–DCN, 2013 WL 3207423, at *2 (D.S.C. June 24, 2013) (citations omitted); *cf. Phillips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir.2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record. We may also consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.") (citations omitted).

In order to survive a motion for judgment on the pleadings, the complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). In reviewing the complaint, the court accepts all well-pleaded allegations as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.,* 417 F.3d 418, 420 (4th Cir.2005). However, the court is not required to accept the legal conclusions the plaintiff sets forth in the complaint. *Edwards,* 178 F.3d at 244. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937. A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

**B.** *Standing*

 Article III of the Constitution constrains federal courts to resolve only actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. Because of this

---

**3.** The factual allegations of the answer are taken as true, to the extent "they have not been denied or do not conflict with the complaint." *Fitchett,* 2011 WL 4435756, at *3

(citing *Pledger v. N.C. Dep't of Health & Human Servs.,* 7 F.Supp.2d 705, 707 (E.D.N.C. 1998); *Jadoff v. Gleason,* 140 F.R.D. 330, 331 (M.D.N.C.1991)).

constitutional limitation, plaintiffs must demonstrate they have standing to adjudicate their claim in federal courts.[4] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Therefore, to establish standing, the plaintiffs must show: (1) that they "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) actual or imminent, not 'conjectural' or 'hypothetical,' "; (2) "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court' "; and (3) that it is " 'likely', as opposed to merely 'speculative', that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations omitted). "The plaintiff bears the burden of establishing injury, traceability, and redressability because it is the party seeking to invoke federal jurisdiction." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir.2002). "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. These requirements help to prevent federal courts from issuing opinions on abstract or hypothetical questions, or from giving advisory opinions. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (noting that federal courts should decide concrete, living contests between adversaries rather than abstract problems). Thus, at the pleading stage in the litigation, the facts as alleged in the pleadings must indicate that Plaintiffs have standing in this action.

### C. Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. Though not explicitly stated in the language of the amendment, courts have long held that this guarantee also protects a state from federal suits brought by its own citizens, not only from suits by citizens of other states. *Hans. v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). "The ultimate guarantee of the Eleventh Amendment is that non-consenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). The phrase "against one of the United States" has

---

4. Because questions of standing are jurisdictional in nature, they may be raised at any time by a party or sua sponte by the court. *Plyler v. Moore*, 129 F.3d 728, 731 n. 6 (4th Cir.1997) (holding that issues regarding subject-matter jurisdiction "may be raised at any time by either party or sua sponte by this court"); *Center State Farms v. Campbell Soup Co.*, 58 F.3d 1030, 1038 (4th Cir.1995) ("Because objections to standing are jurisdictional in nature, they may be raised at any time, ...

even if raised for the first time on appeal ....") (internal citations omitted). "A court does not have subject matter jurisdiction over an individual who does not have standing." *AtlantiGas Corp. v. Columbia Gas Transmission Corp.*, 210 Fed.Appx. 244, 247 (4th Cir. 2006). Thus, before reaching Defendants' Motion for Judgment on the Pleadings, the court must examine whether Plaintiffs have standing in this action.

long been interpreted to include certain state agents and state instrumentalities such that these may also be immune from suit in federal court. *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). Sovereign immunity under the Eleventh Amendment "is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued" in the first instance. *Alabama v. North Carolina,* 560 U.S. 330, 362, 130 S.Ct. 2295, 176 L.Ed.2d 1070 (2010) (quoting *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 147 n. 5, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). Accordingly, once the defendant raises the jurisdictional issue of immunity, the court must resolve this threshold matter prior to addressing the merits of the plaintiff's claims. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (extensively discussing the importance of establishing proper jurisdiction before considering the merits of a claim).

However, under *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), an exception to Eleventh Amendment immunity exists wherein a federal court may "issue prospective, injunctive relief against a state officer to prevent ongoing violations of federal law, on the rationale that such a suit is not a suit against the state for purposes of the Eleventh Amendment." *McBurney v. Cuccinelli,* 616 F.3d 393, 399 (4th Cir.2010) (citing *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. 441). "The requirement that the violation of federal law be ongoing is satisfied when a state officer's enforcement of an allegedly unconstitutional state law is threatened, even if the threat is not yet imminent." *Id.* (citing *Waste Mgmt. Holdings, Inc. v. Gilmore,* 252 F.3d 316, 330 (4th Cir.2001)). Moreover, the plaintiff bears the "burden of showing that he has standing for each type of relief sought" and, thus, for injunctive relief he must allege that "he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.,* 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

The *Ex parte Young* exception is directed at "officers of the state, [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings ... to enforce against parties affected [by] an unconstitutional act." *Ex parte Young,* 209 U.S. at 155–56, 28 S.Ct. 441. Thus, a defendant must have "some connection with the enforcement of the act" or "special relation" to the challenged state action in order to properly be a party to the suit. *Lytle v. Griffith,* 240 F.3d 404, 409 (4th Cir.2001) (quoting *Ex parte Young,* 209 U.S. at 157, 28 S.Ct. 441); *McBurney,* 616 F.3d at 399. This requirement of "proximity to and responsibility for the challenged state action," *S.C. Wildlife Fed'n v. Limehouse,* 549 F.3d 324, 333 (4th Cir.2008), is not met when an official merely possesses "[g]eneral authority to enforce the laws of the state." *Gilmore,* 252 F.3d at 331 (citation omitted). "This 'special relation' requirement ensures that the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials." *Limehouse,* 549 F.3d at 332–33

(citing *Ex parte Young*, 209 U.S. at 158–59, 28 S.Ct. 441).

## III. ANALYSIS

### A. *Plaintiffs' Standing to Challenge the Provisions at Issue*

■ The court's standing analysis begins with the allegations in Plaintiffs' Amended Complaint. Plaintiffs are both female citizens of the State of South Carolina. (ECF No. 41 at 4 ¶¶ 8, 9.) Bradacs "is a public employee" and Goodwin is "80% disabled from the United States Air Force and receives disability from the Veteran's Administration." (*Id.* at 10 ¶¶ 20, 21.) Plaintiffs were legally married as a same-sex couple in the District of Columbia on April 6, 2012, and this same-sex marriage is legally recognized by the District of Columbia and the United States Government. (*Id.* at 1 ¶ 2; *see also* ECF No. 41–1.) As a result of the decision by the State of South Carolina to not recognize their same-sex marriage, Plaintiffs allege that (1) Bradacs cannot nominate either Goodwin or their biological children on her health insurance policy; (2) Bradacs cannot make a claim as a surviving beneficiary on Goodwin's Veteran's Administration ("VA") benefits; (3) Goodwin receives less disability income from the VA; and (4) they cannot claim being married as a standard exemption on their federal tax returns.[5] (*Id.*) Plaintiffs also allege that South Carolina's actions deprive them of "the stabilizing effects of marriage, which helps keep couples together during times of crises or conflict." (*Id.* at 11 ¶ 23.)

In considering these harms identified in the Amended Complaint, and without de-ciding the relevant issues in the case, the court finds that Plaintiffs sufficiently allege suffering an injury in fact, which injury is made more evident by the Fourth Circuit's controlling statements in Bostic:

> When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, . . . . [t]he "injury in fact" . . . is the denial of equal treatment resulting from the imposition of the barrier[.] [Second,] [s]tigmatic injury stemming from discriminatory treatment is sufficient to satisfy standing's injury requirement if the plaintiff identifies "some concrete interest with respect to which [he or she] [is] personally subject to discriminatory treatment" and "[t]hat interest independently satisf[ies] the causation requirement of standing doctrine."

*Bostic*, 760 F.3d at 372 (citations omitted).

Additionally, the court finds that Plaintiffs have sufficiently alleged how their injury in fact is traceable to actions taken at least by Defendant Wilson with respect to recognition of same-sex marriages in South Carolina.[6] In the Amended Complaint, Plaintiffs allege that Defendant Wilson "is sued in his official capacity pursuant to Chapter 7 of Title 1 of the Code of Laws of South Carolina." (ECF No. 41 at 5 ¶ 12.) Chapter 7 of Title 1 of the South Carolina Code requires Defendant Wilson to appear "in the trial and argument of all causes . . . in which the State is a party or interested, and in these causes in any other court or tribunal when required by the Governor or either branch of the General Assembly" and "to defend the right of the

---

**5.** The court acknowledges that Plaintiffs also allege general harms applicable to all same-sex couples.

**6.** The relationship between Plaintiffs' injury in fact and the actions of Defendant Haley is more tenuous. As discussed more fully below, the court finds that Defendant Haley is not an appropriate party in this action and concludes that Plaintiffs are unable to maintain this action against her.

State" in "all cases wherein the right of the State may be involved." S.C.Code Ann. §§ 1–7–40, –710 (2013). In the context of the authority provided by South Carolina statutory law, Defendant Wilson has specifically acted to stop the issuance of marriage licenses to same-sex couples in the wake of the *Bostic* decision. *See State of South Carolina ex rel. Wilson v. Condon*, Petition for Original Jurisdiction and Motion for Temporary Injunction, filed Oct. 8, 2014, available at http://www.judicial.state.sc.us/whatsnew/displaywhatsnew.cfm?indexID=980 (last visited Nov. 10, 2014). Therefore, the court finds that Defendant Wilson has directly contributed to some aspect of Plaintiffs' injury and/or that at least part of their injury is traceable to Defendant Wilson. *Cf. Bostic*, 760 F.3d at 370–71 ("The Plaintiffs' claims can therefore survive Schaefer's standing challenge as long as one couple satisfies the standing requirements with respect to each defendant.")

Finally, should Plaintiffs prevail against these Defendants, an injunction requiring South Carolina to recognize the marriage validly entered into by Plaintiffs would redress their injuries by allowing them to gain access to the benefits they are currently denied.

Based on the foregoing, the court finds that Plaintiffs' Amended Complaint asserts sufficient facts and claims to satisfy all three (3) components of the *Lujan* standard. Therefore, the court concludes that Plaintiffs have asserted a legally cognizable injury, redressable by suing these Defendants. Accordingly, Plaintiffs have standing to bring this action seeking legal

recognition of their same-sex marriage in the State of South Carolina.[7]

### B. Sufficiency of the Allegations in the Amended Complaint

Even assuming all well-pleaded facts in the complaint are presumed to be true, and drawing all reasonable inferences in Plaintiffs' favor, Defendants still maintain that Plaintiffs have not sufficiently pled a constitutional violation. The court disagrees.

Plaintiffs filed this action against Defendants alleging that South Carolina's rejection of same-sex marriages, yet recognition of opposite sex marriages, violates their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and excludes them from many legal protections and various benefits available to opposite sex couples. (ECF No. 41 at 1 ¶ 2, 2 ¶ 3, and 3 ¶ 5).

#### 1. Due Process

In Counts One, Four, and Five of the Amended Complaint, Plaintiffs allege that South Carolina's exclusion of same-sex couples from marriage denies them due process. (ECF No. 41 at 13–14, 16–18.)

The Due Process Clause of the Fourteenth Amendment states that "No state shall … deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Due process includes both procedural and substantive components.[8] Plaintiffs do not

---

7. Since Plaintiffs are already married and only seek legal recognition of that marriage in South Carolina, the court does not find that Plaintiffs have sufficiently established standing to seek relief regarding the application and issuance of marriage licenses to same-sex couples in South Carolina.

8. In order to establish a violation of procedural due process, the plaintiffs must show that: (1) they had a liberty or property interest, (2) of which the Government deprived them, (3) without due process of law. *United States v. Hicks*, 438 Fed.Appx. 216, 218 (4th Cir.2011) (citing *Sunrise Corp. of Myrtle Beach v. City of*

specify whether they are alleging violation of their procedural due process rights or substantive due process rights. Nevertheless, they claim that South Carolina's failure to recognize their marriage deprives them of a fundamental liberty interest—without due process of law.

Upon review, the court is convinced that at the pleadings stage, Plaintiffs have sufficiently alleged the existence of a liberty interest in the right to marry to sustain a claim for violation of due process. Accordingly, the court will allow Plaintiffs to proceed with their claims alleging violation of due process.

### 2. Equal Protection

 In Counts Two through Five of the Amended Complaint, Plaintiffs allege that South Carolina's exclusion of same-sex couples from marriage denies them equal protection under the laws. (ECF No. 41 at 14–18.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To that end, the Equal Protection Clause affords that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To establish an equal protection violation, a plaintiff must first demonstrate that he or she has been "treated differently from others with whom he is similarly situated and

that the unequal treatment was the result of intentional or purposeful discrimination;" once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny. *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (requiring proof of racially discriminatory intent or purpose to show an equal protection violation).

Whether heightened scrutiny applies to Plaintiffs' particular claims is subject to debate, given the United States Supreme Court's recent decision in *United States v. Windsor*, —— U.S. ——, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013). In *Windsor*, the Supreme Court held that denying same-sex couples equal status under the law serves no constitutionally legitimate purpose. *Id.* at 2693–96. However, the Supreme Court did not definitively state which standard of review applies to discriminatory classifications based on sexual orientation. *Id.* at 2696.

Regardless of whether the applicable standard of review is rational basis or heightened scrutiny, the court finds that the Amended Complaint articulates a viable equal protection claim at the pleadings stage. Accordingly, Plaintiffs shall be allowed to proceed with their claims alleging violation of equal protection.

### 3. Bostic

Without ruling on the merits at this stage, this court finds that the *Bostic* deci-

---

*Myrtle Beach*, 420 F.3d 322 (4th Cir.2005)). Procedural due process requires, at a minimum, fair notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them." *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir.1995) (internal cita-

tions and quotation marks omitted). The residual protections of substantive due process "run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any predeprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir.1991).

sion (although brought by couples residing in the State of Virginia) further underscores that Plaintiffs have sufficiently alleged a constitutional violation in their pleading. The Fourth Circuit in *Bostic* specifically found Virginia's marriage laws "violate[d] the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the extent that they ... prohibit Virginia from recognizing same-sex couples' lawful out-of-state marriages." *Bostic,* 760 F.3d at 384. The *Bostic* analysis focuses largely on granting the right to marry a same-sex partner in Virginia, and less on the recognition of a lawful out-of-state same-sex marriage as in the case here. However, it cannot be ignored that the *Bostic* decision establishes that, if proven, a failure to recognize a lawful out-of-state same-sex marriage and bestow the rights that go along with it runs contrary to the Fourteenth Amendment.

### C. *Defendants' Eleventh Amendment Immunity*

■ Defendants assert that this suit is barred against them under the Eleventh Amendment, as "they lack specific enforcement authority regarding South Carolina's same-sex marriage provisions" and thus do not fall under the *Ex parte Young* exception. (ECF No. 78–1 at 18.) Indeed, the South Carolina Constitution bestows a *general* enforcement authority upon Defendants: "The Governor shall take care that the laws be faithfully executed. To this end, the Attorney General shall assist and represent the Governor." S.C. Const. art. IV, § 15. Further, as Defendants point out, the text of S.C.Code § 20–1–15 (2012) and S.C. Const. art. XVII, § 15 do not bestow specific enforcement authority on either Defendant. Absent more than the general authority granted through the South Carolina Constitution, Defendants argue, the *Ex parte Young* exception does not apply. (ECF No. 78–1 at 20.)·

In *Stanley v. Darlington County School Dist.,* the court found the Governor to be a proper party to a suit involving racial desegregation in schools, as the plaintiffs in that case did "not rely simply upon the Governor's general obligation to enforce the laws of the state, but instead relie[d] upon evidence of discriminatory acts by the Governor's predecessors as well as a continuing failure to remedy the effects of the past acts." 879 F.Supp. 1341, 1362 n. 9 (D.S.C.1995), *rev'd in part on other grounds* 84 F.3d 707 (4th Cir.1996). However, no such allegations of discriminatory acts by Defendant Haley's predecessors nor of specific failures by Defendant Haley to remedy those acts are present in Plaintiffs' Amended Complaint.

■ To establish a "special relation" to the challenged provisions, Plaintiffs point to statements by Defendant Haley in news reports to show that she has "publicly claimed a duty to enforce the current laws." (ECF No. 82 at 16.) Under Fed. R.Evid. 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* Generally, a news article cannot be judicially noticed for the truth of what is reported, but can be judicially noticed for facts such that a fact was printed, *see Shahar v. Bowers,* 120 F.3d 211, 214 n. 5 (11th Cir.1997), or such that a collection of numerous articles to show that a fact was widely known, *see In re Cree, Inc. Secs. Litig.,* 333 F.Supp.2d 461, 470 (M.D.N.C. 2004); *Caner v. Autry,* 16 F.Supp.3d 689, 696 n. 11 (W.D.Va.2014). Although the news stories to which Plaintiffs cite quote Defendant Haley's official spokesman and statements issued by the governor's office,

Plaintiffs do not offer an official release from the Governor herself, and offer only the two (2) articles.

Regardless, even if this court were to take notice of the articles as showing the Governor's stance on the laws at issue was well established within the territorial jurisdiction, these statements do not establish more than a general authority. The statements note Defendant Haley is "duty bound to support our law" and that she "remains resolute in her support of South Carolina's constitution and state's rights and this lawsuit doesn't change that." These statements are simply not enough. As the Fourth Circuit stated in *Waste Mgmt. Holdings, Inc. v. Gilmore* in finding suit against the Governor of Virginia was barred by the Eleventh Amendment in that action, "The fact that [the Governor] has publicly endorsed and defended the challenged statutes does not alter our analysis. The purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official now directly involved in enforcing the subject statute." 252 F.3d 316, 331 (4th Cir. 2001). Thus, Defendant Haley does not fall under the *Ex parte Young* exception and suit against her to challenge the laws at issue is barred under the Eleventh Amendment.

Defendant Wilson, however, is not shielded by the Eleventh Amendment in this case. Beyond the state constitutional duty to assist the Governor in faithfully executing the laws of South Carolina, state statutes outline a more active role for the Attorney General in the enforcement of state laws and interests: "He shall appear for the State in the Supreme Court and the court of appeals in the trial and argument of all causes, criminal and civil, in which the State is a party or interested, and in these causes in any other court or tribunal when required by the Governor or either branch of the General Assembly." S.C.Code Ann. § 1–7–40 (2013). Further, "[i]n all cases wherein the right of the State may be involved, the persons claiming under the State shall call on the Attorney General ... to defend the right of the State." S.C.Code Ann. § 1–7–710 (2013). South Carolina case law further establishes a more active duty for the Attorney General.

In 2003, the South Carolina Supreme Court stated, "[t]his Court has recognized that the Attorney General has broad statutory and common law authority in his capacity as the chief legal officer of the State to institute actions involving the welfare of the State and its citizens." *Condon v. State*, 354 S.C. 634, 583 S.E.2d 430, 434 (2003). The state Supreme Court further noted, "[a]s the chief law officer of the State, [the Attorney General] may, in the absence of some express legislative restriction, to the contrary, exercise all such power and authority as public interests may, from time to time, require, and may institute, conduct and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights." *State ex rel. Daniel v. Broad River Power Co.*, 157 S.C. 1, 153 S.E. 537, 560 (1929) (internal citation and emphasis omitted). In *State of S.C. ex rel. Condon v. Hodges*, the Supreme Court of South Carolina noted, "the office of attorney general exists to properly ensure the administration of the laws of this State." 349 S.C. 232, 562 S.E.2d 623, 627–28 (2002) (citing *Langford v. McLeod*, 269 S.C. 466, 238 S.E.2d 161 (1977)).

Despite this, Defendants cite to *Robicheaux v. Caldwell*, 986 F.Supp.2d 749 (E.D.La.2013) to bolster their assertion that the Attorney General has no more than general enforcement authority over

the laws at issue and therefore he is protected by the Eleventh Amendment under *Ex parte Young*. In *Robicheaux*, Defendants note, the court found that the "Attorney General's sweeping responsibility to enforce the laws of the State of Louisiana lacks the *Ex parte Young* specificity nexus between the Attorney General and the alleged unconstitutional provisions that is essential to defeat sovereign immunity." (ECF No. 78–1 at 21, citing *Robicheaux*, 986 F.Supp.2d at 752.) To establish that the Attorney General had undertaken specific enforcement of the law at issue, the plaintiffs in *Robicheaux* cited to a case pending concurrently with theirs that had also named the Attorney General as a defendant and alleged similar facts. 986 F.Supp.2d at 752. However, the court found that "[t]he referenced case might demonstrate the Attorney General's willingness to *defend* the provisions at issue here, but it in no way focuses or establishes his willingness to *enforce* them." *Id.* at 752–53 (citing *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir.2010)) (explaining that "a state actor must be connected with an act's 'enforcement' for the [*Ex parte Young*] exception to apply," and that " '[e]nforcement' typically involves compulsion or constraint.") (emphasis in original).

 In light of the Attorney General's actions regarding the laws at issue in this case, *Robicheaux* serves to weaken Defendants' position and instead helps to establish a specific nexus between Defendant Wilson and the provisions at issue. This court takes judicial notice[9] of Defendant Wilson's motion in the Supreme Court of South Carolina for a temporary injunction to stop the issuance of marriage licenses to same-sex couples in the wake of the *Bostic* decision. *See State of S.C. ex rel. Wilson v. Condon*, Petition for Original Jurisdiction and Motion for Temporary Injunction, filed Oct. 8, 2014, available at http://www.judicial.state.sc.us/whatsnew/displaywhatsnew.cfm?indexID=980 (last visited Nov. 10, 2014). Defendant Wilson states in that motion that "it is the sworn duty of the Attorney General to seek to uphold State law until set aside by the courts." *Id.* at 1. Defendant Wilson cannot take such action to specifically enforce the laws at issue and then hope to invoke Eleventh Amendment immunity under a theory that he simply has only "general authority." Defendant Wilson's motion clearly demonstrates a willingness to specifically enforce these laws, and thus, he falls squarely within the *Ex parte Young* exception and action against him is not barred.

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS IN PART AND DENIES IN PART** the Motion by Defendants Nimrata ("Nikki") Randhawa Haley, in her official capacity as Governor of South Carolina; and Alan M. Wilson, in his official capacity as Attorney General, for Judgment on the Pleadings. (ECF No. 78.) The court **DENIES** the Motion as to Plaintiffs' Amended Complaint finding that they have stated *plausible* allegations of constitutional violations in the denial of recognition by the State of South Carolina of Plaintiffs' same-sex marriage. Thus, it would be premature to grant Defendants' Motion based solely on the allegations in the pleadings. The court **GRANTS** the Motion as to Defendant Nimrata ("Nikki") Randhawa Haley's on Eleventh Amendment immunity grounds and **DISMISSES** her from this

---

9. The court may take judicial notice of court files and records. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) ("We note that '[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.' "); *see also Aloe Creme Lab., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir.1970).

**514**

lawsuit. All other aspects of Defendants' Motion are **DENIED.**

By this ruling, the court does not make any comment on the merits of this action. Such ruling will be set forth in the court's order on Plaintiffs' Motion for Summary Judgment.

**IT IS SO ORDERED.**