13 So.2d 382

SOUTHPORT PETROLEUM CO. OF DELA-
WARE v. FITHIAN et al.

No. 36842.

April 12, 1943.

Prowell & McBride and Oswald W. Viosca, all of New Orleans, for appellant.

Harvey Peltier, P. D. Martinez, and Hubert A. Lafargue, all of Thibodaux, for appellees.

PONDER, Justice.

The appellant, Gwen Russ, one of inter-pleaded defendants, has appealed from the judgment of the trial court in a concursus proceeding. The appellant complains of the judgment of the trial court only inso-far as it recognizes five claimants as priv-ileged creditors to certain funds deposited in the Registry of the Court.

The Southport Petroleum Company of Delaware purchased $6,735.96 worth of crude oil from Taylor Fithian, the operator and lessee, produced from two oil wells located on the Rebstock-Orgeron lease in the Golden Meadow oil field in Lafourche Parish. The Southport Petroleum Com-pany instituted these concursus proceed-ings, alleging that it did not know to whom it owed the purchase price of the oil because of the numerous claimants, some holding liens and others claiming roy-alties. The plaintiff deposited in the Regis-try of the Court $4,196.56 in cash and a guaranty from the Standard Supply and Hardware Company, Inc., for $2,539.40, the amount previously paid it by the plaintiff.

All of the various claimants to these funds were interpleaded. Among those claiming a privilege on the funds deposited in the Registry of the Court were Spell Brothers, Guy E. Talcott, Guy Scroggins, holders of labor liens on the oil wells and equipment; Krause & Managan, Inc., holder of a lien for services furnished, and W. J. Picou Transfer Company, holder of a lien for trucking and hauling.

The trial court, in its judgment, recog-nized the lien and privilege of these five claimants on the oil wells and equipment and held that this privilege extended to the funds deposited in the Registry of the Court, which were derived from the sale of the oil.

The appellant concedes that the claimants have a lien and privilege on the oil wells and equipment, but contends that such liens and privileges cannot be extended to the oil produced from the wells and to the funds derived from its sale.

The sole question, therefore, presented for our consideration is whether or not Act No. 145 of 1934 gives a lien on the oil produced from the wells and the funds derived from its sale.

Upon an examination of the jurispru-dence of this State, we do not find that this question has ever been entertained by this Court. However, in other states it has been held that statutes containing similar provisions to Act No. 145 of 1934 only grant a lien on the oil wells, fixtures and appliances located on the leasehold, and the privilege cannot be extended to the oil pro-duced from the wells. It will be noted that those statutes, as well as Act No. 145 of 1934, do not mention a lien upon the oil produced. Stanolind Crude Oil Purchasing Co. v. Busey, 185 Okl. 200, 90 P.2d 876; Black v. Giarth, 88 Kan. 338, 128 P. 183; Crowley v. Adams Bros. & Prince, Tex. Civ.App., 262 S.W. 883.

From an examination of Act No. 145 of 1934, we find no mention of a lien on the oil produced, and it is obvious that this could not be included under any of the terms of the statute, unless a lien upon a

well should be deemed a lien upon the oil flowing through it. The oil is not a part of well through which it flows, and the statute makes no attempt to fasten a lien upon a lessor's real estate or to extend it beyond the interest of the lessee. It is well settled in this State that there is no title to oil so long as it remains in the earth; consequently, no lien could attach to it as the property of anyone until it is brought to the surface, and when brought to the earth, it is clearly no part of the well. In enumerating the property affected by the lien, there is no language used to indicate that the Legislature intended to extend the lien upon the oil produced. Neither is there anything in the statute to indicate any intention to fasten a lien on the proceeds of the sales of oil produced from oil wells.

The holdings in the cases from other jurisdictions, cited above, are consistent with a long line of jurisprudence of this State to the effect that lien statutes are laws "in derogation of common right (and) must be strictly construed and cannot be extended beyond their precise terms." Sklar v. Lilly-Thompson Drilling Corp., D.C., 45 F.Supp. 470, 472; Rester v. Moody & Stewart, 172 La. 510, 134 So. 690; Red River Construction Co. v. Pierce Petroleum Corp., 165 La. 565, 115 So. 752; Cole v. Schexnadire, 163 La. 132, 111 So. 651. La. Civil Code, Arts. 3183, 3185.

Act No. 100 of 1940 was enacted subsequent to the filing of these concursus proceedings. An examination of this Act shows that the lien is now extended on the oil produced from oil wells and stored on the lease whereon the wells are located. The Legislature evidently believed that the 1934 act did not accord a lien on any of the oil produced from oil wells. It is significant that Act No. 100 of 1940 only grants a lien on the oil produced and stored on the lease upon which the wells are located. Even under the later Act, it might be seriously questioned whether it was the intention of the Legislature to extend the lien to all the oil produced or to restrict it to the oil stored upon the leasehold.

For the reasons assigned, the judgment of the lower court is reversed and set aside insofar as it recognizes Spell Brothers, Guy E. Talcott, Guy Scroggins, Krause & Managan, Inc. and W. J. Picou Transfer Company as privileged creditors to the funds deposited in the Registry of the Court in these proceedings.

ODOM, J., absent.