**William C. SANDOZ, Trustee, et al.**

**v.**

**A.M.F. TUBOSCOPE, INC. et al.**

**In re LATHAM EXPLORATION CO., INC.**

**Civ. A. No. 85–2618.**

United States District Court, W.D. Louisiana, Shreveport Division.

June 24, 1986.

Larry Feldman Jr. and Robert Dunlap, II, Weems, Abney, Wright & Feldman, Shreveport, La., for Kouns & Green, Inc., appellant.

W. James Hill, III, and W. Lake Hearne, Smitherman, Lunn, Chastain & Hill, Shreveport, La., for Trustee in Bankruptcy.

---

Charles N. Wooten, Ltd., Lafayette, La., for Sundoz, William C., trustee.

Murphy, Weir and Butler (Patrick A. Murphy, Penn Ayers Butler), San Francisco, Cal., Jones, Walker, Waechter (R. Patrick Vance) New Orleans, La., for Wells Fargo Bank.

Hargrove, Guyton, Ramey & Barlow (Donald E. Walter) Shreveport, La., for First Sec. Bank of Utah.

Cook, Yancey, King & Galloway (James R. Jeter), Shreveport, La., for Chevron U.S.A., Inc.

Smitherman, Lunn, Chastain & Hill, W. James Hill, III, W. Lake Hearne, Shreveport, La., for H. Wayne Wilson Trustee of Latham Exploration Co., Inc.

Weems, Abney, Wright, Medlin & Feldman, Larry Feldman, Jr., Shreveport, La., for Kouns & Green.

## MEMORANDUM RULING

STAGG, Chief Judge.

This bankruptcy appeal presents a straightforward issue. Does the Louisiana Oil, Gas and Water Well Lien Act, La.R.S. 9:4861 et seq. grant a lien for unpaid insurance premiums contractually required by the agreement governing the operation of gas wells. Kouns & Green, Inc., appellant, contends that unpaid insurance premiums are covered by this statute while the bankruptcy trustee, appellee, contends that they are not. There are no Louisiana cases directly on point.

## I  FACTS

Kouns & Green, Inc. provided insurance coverage to the Latham Exploration Company ("LEXCO") as required by a farmout agreement between LEXCO and Chevron U.S.A., Inc. The premium for certain policies was based on the number of feet drilled in the covered wells. These policies required a quarterly audit. After the audit, the premium was calculated, and LEXCO was billed through Kouns & Green. Before the premium invoice was sent to LEXCO following the September 30, 1983 audit, LEXCO filed a petition for relief under Chapter 11. Kouns & Green was not paid the calculated $285,488.03 premium. Kouns & Green filed a notice of lien and privilege under 9:4861 for this unpaid premium and also filed a proof of claim in the Bankruptcy Court seeking recognition as a secured creditor.

The Trustee opposed this proof of claim and filed a motion for summary judgment in the Bankruptcy Court on the ground that Kouns & Green had no enforceable lien. After briefs were submitted and oral argument was held, the Bankruptcy Court ruled that there was no genuine issue of material fact and that the Trustee was entitled to judgment as a matter of law because Kouns & Green had no valid lien.

Kouns & Green appeals this judgment. As grounds for appeal, it contends that the Bankruptcy Court erred in finding no genuine issue of material fact and in ruling that insurance premiums are not covered by 9:4861.

## II  LEGAL ANALYSIS

Kouns & Green contends that a genuine issue of material fact exists as to whether the provision of insurance was necessary for the operation of the wells by LEXCO. Whether insurance coverage was necessary is a question of *material* fact only if such an inquiry is relevant under the applicable law. This court finds that the necessity of the services rendered is not a proper consideration in determining the validity of a lien asserted under 9:4861.

The Louisiana Oil, Gas and Water Well Lien Act provides materialmen and suppliers of services with a lien and priviledge on all physical assets at the well site, the lease itself and the working interests. La.R.S. 9:4861(A). This statute provides, in part:

> Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water, or who performs any labor or service in the operation or in connection with the operation of any oil, gas or water well or wells, has a privilege....

The Bankruptcy Court held that this Act does not cover unpaid insurance premiums. There is no error in this conclusion.

Privileges are interpreted *stricti juris. Blasingame v. Anderson,* 236 La. 505, 108 So.2d 105, 110 (1959); *see also* La.Civ.Code art. 3185. However, "[c]ourts have no right under the guise of the doctrine of stricti juris to frustrate the intent of the legislature.... Stricti juris does not require an interpretation completely foreign to obvious and clear legislative intent." *Continental Casualty Co. v. Associated Pipe & Supply Co.,* 310 F.Supp. 1207, 1217 (E.D.La.1969). Using these general principles as guidelines, it is clear that the Louisiana Legislature did not intend to grant a lien for insurance premiums under the Oil, Gas and Water Well Lien Act.

The words of the statute do not support appellant's contention that insurance premiums should be granted a lien under 9:4861. That Act covers "[a]ny person who *performs* any labor *or service....*" The Act further requires that the labor or service occur "in connection with the *drilling* of" or "in connection with the *operation* of any oil, gas or water well or wells...." La. 9:4861 (emphasis supplied). *See National Surety Corp. v. Highland Park Country Club, Inc.,* 240 La. 747, 125 So.2d 151, 153 (1960) (analogous method of statutory interpretation under the Louisiana Private Works Act, La.R.S. 9:4801). Kouns & Green has performed no "labor" or "service" on or to the well. *Cf. Continental Casualty Co.,* 310 F.Supp. at 1223 (furnishing crewboats to offshore wells). Nor has it done any act in connection with the actual drilling or actual operation of the well. *Cf. id.* at 1230 (victualing crew of offshore oil well). Louisiana jurisprudence requires that the lien claimant's action be performed "in connection with the actual drilling operations, and not to those remotely connected with the oil and gas venture...." *Gleason v. Twin Cities Drilling Co.,* 183 So. 67, 68 (La.App.2d Cir.1938) (court interpreting predecessor statute to 9:4861).

Kouns & Green cites the *Continental Casualty* case for the proposition that this court should analyze the necessity of the service in determining the validity of a lien. This citation is not persuasive. To determine whether an oil field caterer had a valid lien, the *Continental Casualty* court did not analyze Louisiana cases, but rather looked "to foreign cases ... because the answer is not contained in any Louisiana cases." 310 F.Supp. at 1229. That court concluded that the test generally applied in other jurisdictions is "whether the services, etc., are *necessary* to accomplish the common purpose." *Id.* The case cited by the *Continental Casualty* court in support of this "necessary" test was *Winslow v. Urquhart,* 39 Wis. 261 (1875). In connection with this "necessary" analysis, the *Continental Casualty* concluded that the provision of catering service to an offshore oil well constituted a "labor or service" within the meaning of 9:4861. This was a proper statutory analysis because the caterer contributed to the actual operation of the well. The *Continental Casualty* court did *not* adopt a "necessary" test under 9:4861.

There is no doubt that insurance is "necessary" for the modern oil and gas industry; however, the Louisiana Legislature did not draft a statute providing liens for those supplying labor or services "necessary" for drilling operations. The statute, as enacted by the Legislature was drafted for the protection of materialmen, laborers and suppliers of services to oil, gas and water wells. *See* Pedigo, *Substantive and Procedural Problems Under the Louisiana Oil, Gas and Water Well Lien Act,* 33 La.Bar.J. 16 (1985); *compare Equilease Corp. v. M/V Sampson,* 793 F.2d 598 (5th Cir.1986) (*en banc*). The *M/V Sampson* court held that unpaid insurance premiums were entitled to a lien under the Federal Maritime Lien Act, 46 U.S.C. §§ 971–75. A comparison of the *M/V Sampson* case and the case at bar readily shows why a different result should be reached under the Louisiana Oil, Gas and Water Well Lien Act. The Federal Maritime Lien Act provides a maritime lien on the vessel to "[a]ny person furnishing repairs, supplies, towage, use of dry dock or marine railway, or *other necessaries,* to any vessel...."

46 U.S.C. § 971. The Louisiana Oil, Gas and Water Well Lien Act contains no provision for those supplying "other necessaries." Further, the Federal Maritime Lien Act was part of a larger body of legislation, the Ship Mortgage Act, whose purpose "was to establish sound security in favor of loans to ship owners." *M/V Sampson,* 793 F.2d at 602. "The federal maritime lien is a unique security device, serving the dual purpose of keeping ships moving in commerce while not allowing them to escape their debts by sailing away." *Id.* Neither party suggests that the Louisiana Oil, Gas and Water Well Lien Act was enacted to foster the extension of credit to well operators. There are strong policy reasons why marine insurance should be entitled to a maritime lien. The same policy considerations are not present in 9:4861. Louisiana courts have never interpreted 9:4861 or its predecessors to include "other necessary services" for the operation of wells. *See, e.g., McGee v.*

*Missouri Valley Dredging Co.,* 182 So.2d 764, 768 (La.App. 1st Cir.1966) (surveyor for gas pipeline). The necessity of insurance for the operation of the wells is an irrelevant consideration for purposes of assessing the validity of Kouns & Green's lien. Because this consideration is irrelevant, it cannot constitute a genuine issue of material fact.

The Bankruptcy Court was correct in finding no genuine issue of material fact and in holding that Kouns & Green is not entitled to a lien for unpaid insurance premiums. Accordingly, the judgment of the Bankruptcy Court is AFFIRMED.