**HEBERT ABSTRACT COMPANY, INC., Plaintiff–Appellant,**

v.

**TOUCHSTONE PROPERTIES, LTD., et al., Defendants–Appellees.**

No. 90–4185
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 5, 1990.

Jerry G. Jones and Jennifer Jones Bercier, Jones, Jones & Alexander, Cameron, La., for plaintiff-appellant.

J. Ralph White, Roy C. Cheatwood and Edward B. Poitevent, II, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., and Michael R. Garber, Lake Charles, La.

Gerald J. Casey, Lake Charles, La., for Touchstone Properties.

Herman E. Garner, Jr., Mangham, Hardy, Rolfs, Bailey & Abadie, Lafayette, La., for Conoco, Inc.

Bobby D. Tucker, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, La., for FDIC.

Before KING, GARWOOD and JOHNSON, Circuit Judges.

PER CURIAM:

Hebert Abstract Company appeals the district court's grant of defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Appellant alleges that: 1) the trial court erred procedurally by granting the motion and 2) the trial court erred as a matter of law when it held that under the Louisiana Oil Well Lien Statute a title abstractor is not entitled to a lien. Finding no grounds upon which to reverse the district court's decision, we affirm.

I.

Hebert Abstract Company ("Hebert") filed suit on July 17, 1987 in state court in Cameron Parish, Louisiana against Touchstone Properties, Inc., Touchstone Properties, Ltd., Touchstone Properties (collectively "Touchstone") and Conoco, Inc., seeking to enforce a lien or privilege in the amount of $95,850 [1] pursuant to the Louisiana Oil, Gas, and Water Wells Lien Act, La.Rev. Stat.Ann. § 9:4861, against certain property (mineral leases, wells, rigs and equipment). Hebert asserts this lien on the basis of title abstract preparation work done for Touchstone. Touchstone held a working interest in the subject wells and leases.[2]

The property in question is also subject to the claims of several other parties. Butler–Johnson, Inc. is a Delaware corporation authorized to do business in Louisiana and the owner of a production payment and an overriding royalty interest in the mineral property and a working interest owner of the subject wells and leases. Capitol Bank

---

1. Hebert alleges that it furnished "material, labor, and supplies" in the amount of $158,627.00 and received payments of $62,777.00, thus leaving a debt of $95,850.00.

2. Conoco, Inc. purchased oil produced from these leases and placed the proceeds in an escrow account pending the resolution of this litigation.

& Trust Company of Baton Rouge ("CBT") held promissory notes made by Touchstone which were secured by certain mineral property owned by Touchstone. The Federal Deposit Insurance Corporation ("FDIC") was appointed receiver of CBT's assets and thereby acquired an interest in the subject property. Both Butler–Johnson and FDIC sought leave to intervene in the Louisiana proceeding.

On November 11, 1988, FDIC removed the case from state court to the United States District Court for the Western District of Louisiana pursuant to 12 U.S.C. § 1819. Butler–Johnson, Inc. intervened in the federal suit, since its petition for intervention had not been acted on by the state court.

Butler–Johnson, Inc. and FDIC both brought motions on the pleadings seeking dismissal of the Hebert's lien claim pursuant to Fed.R.Civ.P. 12(c) on the grounds that a title abstractor is not entitled to a lien under La.Rev.Stat.Ann. § 9:4861 as a matter of law. The district court granted the motions and dismissed Hebert's claim. Pursuant to a joint motion by all parties involved in this appeal, the district court granted a Rule 54(b) final judgment with respect to this issue. Based on a showing that Hebert Abstract filed timely notice of appeal, which was misplaced by the district court, the district court allowed the appellant to file a duplicate notice of appeal.

## II.

### A. *Procedural Issue*

Hebert argues that it was error for the district court to dismiss its claim in response to a Motion for Judgment on the Pleadings brought under Fed.R.Civ.P. 12(c). Hebert contends that it should have been given the opportunity to prove facts which would show its services were connected to the drilling of wells as required by La.Rev.Stat.Ann. § 9:4861. Hebert claims that by characterizing its title abstract services in its petition by using the language "materials, labor and supplies [furnished] for the drilling, completion and for production of wells," the pleadings created an issue of fact which would prevent the district court from granting the motion.

■ A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. 5A Wright & Miller, *Federal Practice & Procedure*, § 1367 at 509–10 (1990); *see J.M. Blythe Motor Lines Corp. v. Blalock*, 310 F.2d 77, 78–79 (5th Cir.1962). The facts of the instant case are not in dispute. The only question presented to the district court was one of the interpretation and construction of the Louisiana Oil, Gas and Water Wells Lien Act, La.Rev.Stat.Ann. § 9:4861.[3] A motion brought under Fed.R. Civ.P. 12(c) is specifically designed to facilitate this inquiry. 5A Wright & Miller, *Federal Practice & Procedure*, § 1367 at 511 ("The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain. This may occur, for example, in ... litigation in which the sole question is the applicability or interpretation of a statutory provision.").

■ Hebert Abstract did not request a hearing on this matter in the district court. No objection was raised to adjudication of this issue by Fed.R.Civ.P. 12(c) motions. The district court noted in its Memorandum Ruling "[n]o party disputes the propriety of deciding plaintiff's entitlement to a lein [sic] on the basis of a motion on the pleadings." Hebert Abstract cannot now complain that it was denied an evidentiary hearing since it made no request for such a hearing and failed to object to resolution of the matter under Fed.R.Civ.P. 12(c).

After reviewing the pleadings and the record, we find that the district court was

---

**3.** The issue that the district court and this court are faced with is whether Hebert's performance of title abstracting work in preparation of obtaining leases are labor or services performed in connection with the drilling of any well to grant it a privilege within the protection of La.Rev. Stat.Ann. § 9:4861. The merits of this issue are discussed in II.B of this opinion.

procedurally correct in handling this matter under Fed.R.Civ.P. 12(c). We now turn to the merits of the court's granting of defendant's motion for judgment on the pleadings.

## B. *Substantive Merits*

Hebert Abstract argues that the district court erred in holding that, as a matter of law, a title abstractor was not entitled to assert a lien under the Louisiana Oil, Gas and Water Wells Lien Act, La.Rev.Stat. Ann. § 9:4861. In reviewing this claim, we view all well pleaded facts as true and in the light most favorable to the plaintiff. *Heaney v. United States Veterans Admin.*, 756 F.2d 1215, 1217 (5th Cir.1985). We look to the decisions of the Louisiana courts to assist in determining the issues of substantive law. *See American Nat. Bank v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1535 n. 7 (11th Cir.1983) (Florida law used to decide escrow issue in case removed to federal court under 12 U.S.C. § 1819).

The pertinent provisions of the Louisiana Oil, Gas and Water Wells Lien Act provide a lien and privilege to "[a]ny person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water." La.Rev.Stat.Ann. § 9:4861 (West 1983). Hebert Abstract asserts that title abstracts are an integral part of a drilling operation, in that clear title to a drill site is a prerequisite to drilling. The district court held:

> The activities engaged in by the plaintiff involved necessary steps towards obtaining a lease of the mineral rights, but did not directly involve drilling activity.... Here, as is well known in the oil industry, and even by this Court, not all abstract activity leads to leases and not all leases lead to drilling. These are expenses that would have been incurred regardless of whether drilling ever commenced and were not expenses incurred solely because of drilling activities.

*Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, Civ. No. 88–2822, Memorandum Ruling at 4 (W.D.La. Feb. 6, 1989).

All parties agree that this issue has not been addressed by Louisiana courts.

■ Louisiana law is clear that liens and privileges are to be strictly construed, as they are in derogation of common rights. They cannot be extended beyond their precise terms by judicial construction. *Blasingame v. Anderson*, 236 La. 505, 108 So.2d 105, 110 (1959); *Southport Petroleum Co. of Delaware v. Fithian*, 203 La. 49, 13 So.2d 382, 383 (1943); *P. & A. Well Serv. v. Blackie's Power Swivels*, 507 So.2d 280, 282 (La.App. 3rd Cir.), *writ denied*, 513 So.2d 288 (La.1987); *Texas Pipe & Supply v. Coon Ridge Pipeline*, 506 So.2d 1296, 1298 (La.App.2d Cir.1987); *see* La. Civ.Code Ann. art. 3185 (West 1990) ("Privilege can be claimed only for those debts to which it is expressly granted in this Code.").

Since 1916, Louisiana has had a special lien for suppliers in the oilfield. *Ogden Oil Co., Inc. v. Venture Oil Corp.*, 490 So.2d 725, 728 (La.App. 3rd Cir.), *writ denied*, 494 So.2d 328 (La.1986). The earliest forerunners of La.Rev.Stat.Ann. § 9:4861 gave laborers a lien or privilege on oil or gas wells. Later legislation expanded the class of those entitled to assert the lien or privilege to include those who performed services for or labor to, or who supplied material in connection with, the drilling or operation of oil, gas or water wells—the materialmen, service contractors, repairmen, truckers, bargers, towers, and pipeline workers. *Louisiana Materials Co. v. Atlantic Richfield Co.*, 493 So.2d 1141, 1146–47 & n. 7 (La.1986).

Louisiana federal and state courts have consistently denied the right to assert this lien or privilege to those whose work, or supplies, are not directly related to the actual drilling or operation of an oil, gas or water well. *See Sandoz v. A.M.F. Tuboscope, Inc.*, 61 B.R. 1020, 1023 (W.D.La. 1986) (no lien extended for unpaid insurance premiums contractually required by the agreement governing the operation of a gas well); *Baker Chemicals v. Arkla Exploration*, 545 So.2d 709, 712 (La.App.2d Cir.), *writ denied*, 550 So.2d 632 (La.1989) (furnisher of furnisher of goods who does

not deliver to wellsite and who does not look to the well for security is not entitled to lien); *P. & A. Well Service v. Blackie's Power Swivels*, 507 So.2d at 283 (furnisher of furnisher of oil field drilling tool was not entitled to lien because it furnished equipment to another as part of a rental agreement, not directly to well); *Melyn Industries, Inc. v. Sofec, Inc.*, 392 So.2d 733, 736 (La.App. 3rd Cir.1980) (builder of mooring buoys was not entitled to lien because buoys were designed to service an oil terminal facility, not for or in connection with the operation of any wells); *McGee v. Missouri Valley Dredging Co.*, 182 So.2d 764, 768 (La.App. 1st Cir.) (land surveyor hired to survey land in connection with construction of pipeline was not entitled to lien because his work was not a part of the drilling operation), *writ denied*, 249 La. 62, 184 So.2d 734 (1966); *Willis v. Mills Tooke Properties*, 42 So.2d 548, 551–52 (La. App.2d Cir.1949) (person who filled in slush pits from well and repaired road and yard to pre-drilling conditions did not have right to lien because work had no connection to drilling). Courts have been willing to extend this right to assert the lien to some persons in cases where the supplies in question were specifically connected to drilling operations. *See Texas Pipe & Supply*, 506 So.2d at 1299 (furnisher of furnisher allowed to assert lien where he delivered or "furnished" supplies to wellsite); *cf. Dahlberg & Co., Inc. v. Chevron U.S.A., Inc.*, 836 F.2d 915, 919 (5th Cir. 1988) (furnisher of furnisher allowed to assert lien because goods were targeted for specific wellsites).

■ A close nexus must be found between Hebert Abstract's title abstracting services and the drilling operation at issue to maintain its claim. Although Hebert is correct that "[w]ithout good title, there is no valid lease ...," the nexus between a title abstract preparation and drilling is too attenuated for this federal court to construe its activity as being "in connection with drilling" sufficiently to place it within the limits of the Louisiana statute. As the

district court found, a title abstract has to do with the chain of title to a property. It does not have anything to do with the actual drilling or operation of any well or wells or the operation, maintenance or repair of pipelines. Hebert Abstract performed no "labor" or "service" on or to the wells. *See Sandoz*, 61 B.R. at 1022.

Although Hebert Abstract argues that its services were necessary before drilling could begin, the "necessity of the services rendered is not a proper consideration in determining validity of [the] lien." *Sandoz*, 61 B.R. at 1021. If this argument prevailed, "every person from the wellhead to the consumer would have a lien on the ... well." *McGee*, 182 So.2d at 768.

Even were this court to find the statute and the Louisiana cases interpreting it sufficiently ambiguous to allow a construction such as Hebert suggests, the ambiguity would still have to be resolved against Hebert, as the one claiming the lien and privilege. *Louisiana Materials Co. v. Atlantic Richfield*, 493 So.2d 1141, 1148 (La.1986) (Marcus, J. dissenting); *Melyn Industries, Inc.*, 392 So.2d at 735; *McGee*, 182 So.2d at 768. The district court correctly held that a title abstractor was not entitled to a lien pursuant to the Louisiana Oil, Gas and Water Wells Lien Act, and dismissed Hebert Abstract's claims. We therefore affirm the district court's decision on this issue.[4]

AFFIRMED.

---

**4.** Although this court took a fresh look at the merits of this case, viewing all pleaded facts in the light most favorable to the plaintiff, we note that the analysis of the district court was extremely well presented and persuasive.